IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 10-800-01 |
| BARRETT BYRON STATON, ET AL. | : | |

**SURRICK, J.**                                                                                                                    **JUNE  5 , 2012**

# MEMORANDUM

Presently before the Court is the Government's Motion *in Limine* to Admit Evidence Regarding Defendant Barrett Byron Staton's Bank Records and Income Tax Returns. (ECF No. 96.) For the following reasons, the Motion will be granted.

**I.  BACKGROUND[1]**

    **A.  Procedural Posture**

On July 21, 2011, a federal grand jury returned a First Superseding Indictment ("Indictment") against Defendants Barrett Byron Staton, Matthew Staton and William Haken, Jr. (Gov't's Mot. 2, ECF No. 96; *see also* ECF No. 38 (First Superseding Indictment, hereinafter, "Indictment")). Barrett Byron Staton (hereinafter, "Defendant") was charged with: conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count One); wire fraud, in violation of 18 U.S.C. § 1343 (Counts Two through Five); mail fraud, in violation of 18 U.S.C. § 1341 (Counts

---

[1] The facts are taken from the Government's Motion *in Limine*. Defendant Barrett Byron Staton does not dispute these facts in his Response to the Motion. *See United States v. Shelow*, No. 10-0037, 2011 WL 6130974, at *1 n.1 (E.D. Pa. Dec. 9, 2011) (taking all facts from the Government's motion in limine since the defendant did not dispute these facts in his response to the motion); *United States v. Mitan*, Nos. 08-760-01, 08-760-02, 2009 WL 3169119, at *1 (E.D. Pa. Sept. 23, 2009) ("Unless specifically disputed by [one of the defendants], all facts are taken from the Government's Motion in Limine.").

Six through Nine); and making a false statement in a loan application, in violation of 18 U.S.C. § 1014 (Count Ten).  (Gov't's Mot. 2; Def.'s Resp. 1-2, ECF No. 104.)

### B. The Fraudulent Scheme

The Indictment asserts that since January 2002, Defendant has been engaged in a fraudulent scheme involving businesses that he either owned or controlled.  (Gov't's Mot. 2.)  Through these businesses, Defendant brokered leases for new office copy machines.  The scheme involved having prospective customers complete a lease and an application for financing.  Defendant would present the lease and the customer's credit information to a financing company.  (*Id.*)  If the customer's credit was acceptable, the financing company would provide to Defendant's company a lump sum payment for up to 125 percent of the value of the new office copy machines.  (*Id.* at 3.)

Defendant would "entic[e]" the customers to sign new leases by offering to pay off their old copy machine leases and to provide free maintenance services to them.  (*Id.*) However, Defendant would pay off the leases and provide free maintenance services for the first few months only.  In addition, Defendant would alter the leases, which his customers had already signed, to include additional copy machines or other features that the customer did not order and ultimately never received.  This practice increased the lump sum payment that Defendant would receive from the financing companies.  Defendant also would induce customers to complete new lease applications under the guise of "refinancing" their leases on existing copy machines, then submit the new lease applications to an entirely different lease company.  This practice would obligate a customer to make two separate lease payments on one copy machine and enabled Defendant to collect two lump sum payments for each machine.  Defendant would execute this

scheme until he was flooded with customer complaints about unpaid leases, upon which he would shut down his business, only to reopen another business under a different company name shortly thereafter. (*Id.*) This fraudulent scheme occurred in three distinct phases: (1) Access Business Solutions, Inc. ("ABS"), which Defendant operated from January 2002 to March 2004; (2) First Choice Imaging, LLC ("FCI"), which Defendant operated from May 2005 to March 2007; and (3) NBS Document Solutions, also known as New Business Systems, LLC ("NBS") and World Trade Systems ("WTS"), which Defendant operated from November 2007 to September 2008. (*Id.*)

      **C.**      **The Evidence At Issue**

The Government seeks to admit the following evidence: (1) ABS bank account records from June 2002 to January 2004; (2) credit card statements related to the ABS bank account; (3) FCI bank account records from July 2005 to December 2006; (4) credit card statements related to the FCI bank account from August 2005 to January 2007; (5) Defendant's personal income tax return for the tax year 2002; (6) a certification for lack of records for Defendant's personal income tax returns for the tax years 2003 through 2008; and (7) certifications of lack of records for corporate income tax returns for ABS, FCI, NBS and WTS for the tax years 2002 to 2008. (*Id.* at 2 n.1.)

            1.      *Defendant's Bank Account and Related Credit Card Records*

Over the course of the Government's investigation, bank records from June 2002 to January 2004 were obtained for the primary bank account under Defendant's name ("ABS Bank Account"). The Government states that the Federal Bureau of Investigation ("FBI") analyzed records from this account to determine the nature of the deposits and withdrawals made and

subsequently produced a summary of its findings. The Government asserts that this summary shows, *inter alia*, that over $2 million in deposits were made into the ABS Bank Account during this time frame; and that "significant sums of money" were withdrawn from this account to pay for Defendant's "personal life style." (*Id.* at 4.) Defendant used the ABS Bank Account to make the following purchases or withdrawals: (1) $60,947.63 in checks written to Defendant; (2) $112,473.80 in unknown cash withdrawals; (3) $13,977.48 in entertainment expenses; (4) $51,372.19 in retail store purchases; (5) $5,620.98 in vacation expenses; and (6) $70,920.35 in credit card payments, which included payments for two credit cards that were in the name of Defendant's wife, who was not an ABS employee. (*Id.*)

In addition, records from July 2005 to December 2006 were obtained for another bank account under Defendant's name ("FCI Bank Account"). Credit card statements that were paid from this account from August 2005 to January 2007 were obtained as well. (*Id.* at 4-5.) The FBI analyzed these records. The Government claims that the FBI's analysis revealed that over $2.5 million in deposits were made into this account. (*Id.* at 5.) The Government also claims that the records show that Defendant "made substantial personal purchases" and withdrawals using the account, including: (1) $258,073.24 in unknown cash withdrawals; (2) $105,048.40 in expenses related to cars; (3) $6,999.82 in jewelry expenses; (4) $1,255.65 in vacation expenses; and (5) $270,915.96 in credit card expenses, which included two credit cards in the names of Defendant and his wife, respectively. (*Id.*) The records for the credit card under Defendant's name reflected $12,527.59 in vacation-related purchases, and the records for the credit card listed under his wife's name reflected $4,277.55 in retail store purchases. (*Id.*)

    2. *Defendant's Tax Returns*

  Defendant's personal income tax returns, and the corporate income tax returns for the various businesses that he operated or controlled, were obtained as well.

  The time frame of Defendant's fraudulent scheme covers the tax years ("TYs") 2002 through 2010. (*Id.* at 6.) The Government asserts that Defendant's personal income tax return for TY 2002 reveals that it was filed in 2004 and that Defendant claimed a total income of $11,180. However, Defendant claimed that he did not generate any income from ABS, the business operating at the time. (*Id.*) In addition, the ABS Bank Account records purportedly show "substantial activity starting in June 2002 (the same time [Defendant] incorporated ABS and opened this bank account)." (*Id.*) Moreover, Defendant did not file any personal income tax returns for TYs 2003 through 2008, the years during which the fraudulent scheme took place. Furthermore, despite owning and operating ABS, FCI, NBS and WTS, Defendant did not file any corporate income tax returns for these companies from TYs 2003 through 2008. (*Id.*)

**II. DISCUSSION**

  Under Federal Rule of Evidence 404(b), parties may not introduce "evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). Such evidence may be admissible if it is "probative of a material issue other than character." *Id.*

  Rule 404(b) "does not apply to evidence of uncharged offenses committed by a defendant when those acts are intrinsic to the proof of the charged offense." *United States v. Gibbs*, 190 F.3d 188, 217 (3d Cir. 1999); *see also United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002)

(stating same). As one prominent commentator has explained:

> In cases where the incident offered is a part of the conspiracy alleged in the indictment, the evidence is admissible under Rule 404(b) because it is not an "other" crime. The evidence is offered as direct evidence of the fact in issue, not as circumstantial evidence requiring an inference as to the character of the accused. Such proof . . . may be extremely prejudicial to the defendant but the court would have no discretion to exclude it because it is proof of the ultimate issue in the case.

*Gibbs*, 190 F.3d at 217-18 (citing 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5239, at 450-51 (1978)).

### A. Admissibility As Intrinsic Evidence

#### 1. The Parties' Contentions

The Government contends that the evidence that it seeks to admit is intrinsic to the offenses with which Defendant has been charged. It argues that the bank and related credit card records show that Defendant used the proceeds from the fraudulent scheme to pay for personal vacations, expensive cars and "other luxury items," and to "make significant cash withdrawals." (Gov't's Mot. 1, 8.) The Government also argues that the tax returns evidence shows "not only a pattern of concealing income, but also that [Defendant's] companies were simply conduits for him to steal money from victim businesses and finance companies—both of which directly prove [Defendant's] intent to defraud." (*Id.* at 1, 8-9.)

Defendant, on the other hand, contends that the evidence that the Government seeks to admit is not intrinsic evidence. Defendant argues that the fact that he may have used some business entity funds for his personal use does not directly prove that he intended to defraud the victims. (Def.'s Resp. 3.) He claims that any "intrinsic conduct" must be "directly correlated to the criminal conduct" that a defendant is charged with. He states that contracts entered into by customers and himself, and in which the customers were misled as to what they were bargaining

6

for, might constitute intrinsic evidence in this action. However, he claims that an individual's failure to file personal or corporate income taxes does not constitute intrinsic evidence. (*Id.* at 4.)

    2.    Legal Standard

The Third Circuit has rejected the definition of "intrinsic evidence," commonly used by other Circuits, as evidence that is "inextricably intertwined" with the charged offense. *United States v. Green*, 617 F.3d 233, 248 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 363 (2010).[2] In *Green*, the Third Circuit held that the "intrinsic" label applies only to "two narrow categories of evidence." *Green*, 617 F.3d at 248. The first category is evidence that "directly proves" the charged offense. *Id.* (citing *Gibbs*, 190 F.3d at 218; *Bowie*, 232 F.3d at 929). The second category is evidence of "'uncharged acts performed contemporaneously with the charged crime'" that "'facilitate the commission of the charged crime.'" *Id.* at 249 (quoting *Bowie*, 232 F.3d at 929). All other evidence must be analyzed under Rule 404(b). *Id.* The Third Circuit has observed that "[a]s a practical matter, it is unlikely that our holding will exclude much, if any, evidence that is currently admissible as background or 'completes the story' evidence under the inextricably intertwined test." *Id.*

    3.    Application of the Legal Standard

Defendant is charged with wire fraud under 18 U.S.C. § 1343, conspiracy to commit wire

---

[2] The Third Circuit noted that it has distinguished its definition of intrinsic evidence from "most courts of appeals," which "hold that acts are 'intrinsic' to the charged offense if they are 'inextricably intertwined' with that offense." *Green*, 617 F.3d at 245. Before renouncing the "inextricably intertwined" test in *Green*, the Third Circuit had criticized the definitions of intrinsic evidence as either "'inextricably intertwined' with the charged offense" or "'complet[ing] the story' of the charged offense" as too narrow and too broad, respectively. *See, e.g.*, *Cross*, 308 F.3d at 320 (quoting *United States v. Bowie*, 232 F.3d 923, 927-29 (D.C. Cir. 2000)).

fraud in violation of 18 U.S.C. § 1349, mail fraud under 18 U.S.C. § 1341, and making a false statement in a loan application in violation of 18 U.S.C. § 1014.  The elements of wire fraud under 18 U.S.C. § 1343 are that:  (1) defendant devised a scheme to defraud or to obtain money, property . . . by materially false or fraudulent pretenses, representations or promises (or willfully participated in such a scheme with knowledge of its fraudulent nature); (2) defendant acted with the intent to defraud; and (3) in advancing, furthering, or carrying out the scheme, defendant transmitted a writing, signal or sound by means of a wire, radio or television communication in interstate commerce, or caused the transmission of any writing, signal or sound of some kind by means of a wire, radio or television communication in interstate commerce.  Third Circuit Model Criminal Jury Instructions § 6.18.1343.  The elements of mail fraud under 18 U.S.C. § 1341 are that:  (1) defendant knowingly devised a scheme to defraud or to obtain money, property . . . by materially false or fraudulent pretenses, representations or promises; (2) defendant acted with intent to defraud; and (3) in advancing, furthering or carry out the scheme, defendant used the mails, or caused the mails to be used.  *Id.* at § 6.18.1341.  Section 1014 of Title 18 states, in relevant part, that it is unlawful for anyone

> knowingly to make a false statement for the purpose of influencing in any way the actions of any institution the accounts of which are insured by the Federal Deposit Insurance Corporation upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan or any change or extension of any of the same.

*United States v. Edwards*, 455 F. Supp. 1354, 1355 (M.D. Pa. 1978).  These offenses require a showing of intent or knowledge.

    The bank and related credit card records at issue here are admissible to directly prove the intent or knowledge elements of the charged offenses.  These records reveal that large sums of

money were being deposited into these accounts by the financing companies involved. They reflect that Defendant spent the money in these accounts on personal expenses, such as expensive cars, vacations and other luxury items,[3] rather than on paying off the old lease agreements on behalf of the victims, as offered. Such evidence supports an intent and knowledge by Defendant to defraud the victims, pursuant to the Government's theory — specifically, that Defendant purposefully lured his customers to sign new leases, so that he would receive large lump sums of money from the financing companies, which he would spend on personal expenses. Indeed, the Indictment alleges that "[i]t was further a part of the scheme and artifice to defraud that [Defendant] would not pay off the customer's prior leases as promised, instead retaining a greater portion of the lump sum payment from the financing companies for [his] own use." (Indictment ¶ 7); *see also United States v. Johnson*, 262 F.R.D. 410, 416 (D. Del. 2009) (admitting evidence on grounds that it was intrinsic since it demonstrated that the defendants possessed the requisite fraudulent intent for the crimes charged).

  The tax evidence also is admissible to prove Defendant's intent to commit, and his knowledge of committing, the fraudulent scheme. The fact that Defendant did not claim any income from ABS, the company that he operated in 2002, on his personal income tax returns for TY 2002 supports an inference that he intended to conceal the income he was receiving as a result of the fraudulent leases his customers signed. (Indictment ¶ 6 (alleging that by fraudulently altering the leases that Defendant's customers had signed, he increased the apparent

---

[3] The Government states in its Motion that Defendant leased (1) a GMC Yukon Denali, valued at $58,332.24, (2) a GMC Yukon Denali, valued at $62,148.32, (3) a Mercedes Benz Model C330W4, valued at $45,985.25, and (4) a BMW Model 750IL, valued at $47,353.65. (Gov't's Mot. 8 n.4.)

value of the lease, thereby enhancing the lump sum payment received from financing companies).) Furthermore, the fact that Defendant failed to file any personal income tax returns or corporate income tax returns from TYs 2002 through 2008 evinces not only a pattern of concealing income, but also that the companies ABS, FCI, NBS and WTS were "shell" companies through which Defendant committed this fraudulent scheme. (*See id.* at ¶ 13 ("It was further a part of the scheme and artifice that defendants would periodically close one company and reopen under a new name to continue the fraud. In some cases, the new company would be opened under the name of a nominee owner of record to hide the involvement of defendant BARRETT BYRON STATON.")); *see also United States v. Benjamin*, 125 F. App'x 438, 440-41 (3d Cir. 2005) (affirming district court's ruling that the challenged evidence was intrinsic to the Government's case since it demonstrated defendant's overarching scheme in which he unjustly enriched himself by selling computers for which the government had paid and since "acts are intrinsic when they directly prove" the charged offense) (citing *Cross*, 308 F.3d at 320); *Mitan*, 2009 WL 3169119, at *12 (admitting evidence where each of the business transactions offered as proposed evidence had the same attributes as the charged fraudulent scheme and conspiracy described in the Superseding Indictment and concluding that the transactions were direct proof of the elements of a conspiracy to commit wire and mail fraud); *Johnson*, 262 F.R.D. at 416 (concluding that the tax return evidence was intrinsic to the charged offenses, which included conspiring to commit mail and wire fraud, committing mail and wire fraud and engaging in an illegal monetary transaction, because the returns "demonstrate[d] the manner in which [the] [d]efendants reported, or failed to report, significant income allegedly coming from [defendant's company's] loan application fees," and "an alleged pattern of concealing income,

demonstrated by the tax return evidence as a whole, [which] serve[d] as direct proof that [the defendants] possessed the requisite fraudulent intent for the crimes charged"). The fact that the bank account and related credit card records and tax returns that the Government seeks to introduce at trial overlap with the time frame at issue further supports the intrinsic nature of such evidence. *See Green*, 617 F.3d at 249 (noting that the second category of intrinsic evidence consists of "uncharged acts performed contemporaneously with the charged crime" that "facilitate the commission of the charged crime") (internal quotation marks and citation omitted).

Defendant argues that the holding and reasoning of the District Court for the Eastern District of Louisiana in *United States v. Impastato*, 535 F. Supp. 2d 732 (E.D. La. 2008), should apply here. We disagree. The defendant in *Impastato* was charged with eleven counts of conspiracy, extortion, federal program fraud, attempted money laundering and making false statements to the IRS. *Id.* at 734. The Government sought to introduce the defendant's failure to report income to the IRS for TYs 1999 through 2004. The Government contended that the evidence was intrinsic to the crimes alleged, reflecting the defendant's attempts to obtain and conceal unreported cash by not reporting taxes. *Id.* The court in *Impastato* rejected the Government's contention and held that such conduct was not intrinsic evidence since there was no charge that the tax-related offenses were part of the same criminal episode or that they were "otherwise intertwined." *Id.* at 735.

*Impastato* is clearly distinguishable and does not apply here. First, the Third Circuit has rejected defining "intrinsic evidence" as evidence that is "inextricably intertwined" with the charged offense. *See Green*, 617 F.3d at 248. Moreover, in the instant action, Defendant has been charged with different offenses. In addition, unlike *Impastato*, here, the non-tax allegations

11

share the same factual basis as the tax return evidence. In *United States v. Johnson*, the Government contended that the tax return evidence that it sought to admit was intrinsic evidence since the money reported as compensation on a 2005 tax return was "actually the fruits of the fraudulent scheme, and that the return 'enabl[ed Defendants] to remove the money from the company under the guise of employment compensation.'" 262 F.R.D. at 416 (citation omitted). The court held that the tax returns demonstrated the manner in which the defendants reported, or failed to report, significant income coming from loan application fees that were fraudulently obtained. *Id.* The court determined that "an alleged pattern of concealing income, demonstrated by the tax return evidence as a whole, serves as direct proof that [the defendants] possessed the requisite fraudulent intent for the crimes charged," which included mail and wire fraud. *Id.* Furthermore, the Third Circuit has recognized that uncharged tax offenses are admissible as proof of charged crimes, and other Circuits have recognized that a defendant's tax return, or lack thereof, is properly admissible as intrinsic evidence of intent to defraud in fraud prosecutions. *See id.* at 415 (citing *United States v. Chandler*, 326 F.3d 210, 215-16 (3d Cir. 2003); *United States v. Epstein*, 426 F.3d 431, 439 (1st Cir. 2005)).[4] Accordingly, the evidence that the Government seeks to admit in the instant Motion will be treated as intrinsic evidence.[5]

---

[4] The court in *Johnson* noted that while other Circuits have found evidence to be intrinsic where it is "inextricably intertwined" with, or "completes the story of" the charged offense, the Third Circuit has "insisted on a significantly closer connection for exemption from 404(b)." *Johnson*, 262 F.R.D. at 416 (citing *Cross*, 308 F.3d at 320; *United States v. Haas*, 184 F. App'x 230, 233-34 (3d Cir. 2006)). As discussed above, the Third Circuit has since clarified its standard for intrinsic evidence. *See Green*, 617 F.3d at 248-49. Moreover, the *Johnson* court ultimately held that, even under this more rigorous standard, the tax return evidence was intrinsic. *Johnson*, 262 F.R.D. at 416.

[5] The Third Circuit has explained that, like Rule 404(b) evidence, intrinsic evidence must be relevant, survive a Rule 403 balancing test, and be probative of something other than the

**B.     Federal Rule of Evidence 404(b)**

*1.     The Parties' Contentions*

In the alternative, the Government argues that the evidence showing Defendant's use of "fraudulent proceeds for personal benefit" and his failure to file tax returns should be admissible as "other bad acts" that prove Defendant's intent, motive, knowledge, plan and absence of mistake, pursuant to Rule 404(b).  (Gov't's Mot. 1-2, 10-11.)

Defendant opposes the Government's arguments.  He appears to argue that any probative value that this evidence has is outweighed by unfair prejudice.  (Def.'s Resp. 4 (arguing that "[a]ll that evidence relative to tax obligations does is to sully [Defendant's] character").)

We agree with the Government.

*2.     Legal Standard*

The Third Circuit takes an "inclusionary" approach to evidence under Rule 404(b).  *United States v. Long*, 574 F.2d 761, 765-66 (3d Cir. 1978) (tracing history of Third Circuit's policy on admission of character, or "other acts," evidence beginning prior to passage of Federal Rule of Evidence 404).  While other acts evidence is inadmissible to prove that a defendant "acted in conformity therewith," "[such] evidence may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  *United States v. Jemal*, 26 F.3d 1267, 1272 (3d Cir. 1994) (citing Fed. R. Evid. 404(b)).  Other acts evidence may be admitted for a reason not specifically listed in Rule

---

defendant's criminal propensity.  *Green*, 617 F.3d at 247-48 (citing *Bowie*, 282 F.3d at 927).  Indeed, the Court noted that the only "practical difference" between intrinsic evidence and Rule 404(b) evidence is whether the defendant is entitled to Rule 404(b)'s procedural protections, i.e., notice by the prosecution and a limiting instruction by the court.  *Id.*  We will examine whether the evidence meets these remaining standards in the subsequent section.

404(b), "so long as it is used for a purpose other than proving a defendant's likelihood to have committed this particular crime based on an inference drawn from evidence pertaining to his character." *Id.* (citing *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988), *cert. denied*, 488 U.S. 910 (1988)).  The purpose of Rule 404(b) is "'simply to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person . . . .'" *Green*, 617 F.3d at 249 (quoting *United States v. Taylor*, 522 F.3d 731, 735-36 (7th Cir. 2008)).

In determining whether Rule 404(b) evidence should be admitted, the Third Circuit follows the following four-part test:  (1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its potential for unfair prejudice under Rule 403; and (4) the Court must charge the jury to consider the evidence only for the limited purpose for which it is admitted.  *Huddleston*, 485 U.S. at 691-92; *United States v. Moore*, 375 F.3d 259, 263-64 (3d Cir. 2004) (quoting *United States v. Vega*, 285 F.3d 256, 261 (3d Cir. 2002) (citing *Huddleston*, 485 U.S. at 691-92)).[6]  While a district court has discretion to admit evidence under Rule 404(b), it should "place on the record a clear explanation of the basis for its ruling on the admission of the evidence." *United States v. Murray*, 103 F.3d 310, 316 (3d Cir. 1997).

       3.    *Application of the Legal Standard*

           a)    <u>The Evidence Has a Proper Purpose and Is Relevant</u>

Federal Rule of Evidence 404(b) provides that:

---

[6] Federal Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402.

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b).

In addition, in order to admit other acts evidence, the evidence must be relevant. *Huddleston*, 485 U.S. at 689. Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

For the reasons discussed above, the evidence at issue is relevant. The bank account and related credit card records support the scheme to defraud customers by: (1) not paying off the customer's prior leases, as promised; (2) obtaining a greater portion of the lump sum payment from the financing companies by fraudulently altering the leases; and (3) using the funds obtained through this scheme for Defendant's own use. The tax evidence is admissible to support the Government's theory that Defendant's companies, ABS, FCI, NBS and WTS, were all "shell" companies through which Defendant obtained signed leases and which he was able to commit fraud. It supports the scheme that Defendant intended to close one company periodically, and then reopen under a new name to continue to perpetrate the fraud.

The evidence in question is properly introduced to prove Defendant's intent, knowledge, motive or plan. It proves that it was Defendant's intent, or plan, to use the proceeds of his fraudulent scheme for his personal benefit. Moreover, Defendant's failure to file any personal

15

income or corporate income tax returns for TYs 2003 through 2008 also shows that Defendant intended and planned to conceal the income he derived from the proceeds of the scheme. And the evidence also demonstrates motive — that Defendant engaged in this scheme in order to obtain funds from financing companies, funds that he ultimately would spend on personal expenses. *See United States v. Crim*, 451 F. App'x 196, 205 (3d Cir. 2011) (finding that defendant's failure to file a tax return was probative of intent to defraud the Government and admissible as proof of motive, intent, plan or knowledge); *Shelow*, 2011 WL 6130974, at *6 (admitting Rule 404(b) evidence since the evidence of the defendant's past fraudulent schemes "may be probative of his knowledge that his activities were fraudulent, his awareness of the illegality of his conduct, and his opportunity to pray on the victims' trust in order to extract hundreds of thousands of dollars, as he allegedly did numerous times before," and since "the evidence could be probative of the defendant's particular pattern of fraudulent investment schemes"). The evidence at issue here clearly has a proper purpose and is relevant.

            b)        <u>Probative Value Outweighs Unfair Prejudice</u>

Even if the proffered evidence is relevant and offered for a proper purpose, it may not be admitted "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; *see also Huddleston*, 485 U.S. at 691 (stating same). Rule 403 also instructs that evidence should be excluded if its probative value is substantially outweighed by the danger of "confusion of the issues, [ ] misleading the jury, [ ] considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Factors to consider in performing Rule 403 balancing in the Rule 404(b) context include:

> the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need

> for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

Kenneth S. Braum et al., McCormick on Evidence § 190 (6th ed. 2009). "In weighing the probative value of evidence against the dangers . . . in Rule 403, the general rule is that the balance should be struck in favor of admission." *United States v. Johnson*, 199 F.3d 123, 128 (3d Cir. 1999) (quoting *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980)).

We are satisfied that the probative value of this evidence is not outweighed by the potential for unfair prejudice. The evidence is highly probative of establishing the Government's claim that Defendant engaged in a fraudulent scheme. The prejudice that Defendant claims will occur as a result of admitting this evidence is the "sull[ying]" of Defendant's character. (Def.'s Resp. 4.) In this instance, the probative value of the evidence, which is very high, outweighs any risk of unfair prejudice. *See United States v. McNeill*, 728 F.2d 5, 13 (1st Cir. 1984) (finding that trial court did not abuse its discretion in failing to find that any danger of unfair prejudice substantially outweighed the probative value of the evidence, even though admission of this evidence may have prejudiced defendant by showing a propensity to lie, since evidence tended to show that defendant intended to defraud and did not do so by mistake or accident); *United States v. Ballard*, No. 11-455, 2012 WL 72707, at *7 (E.D. Pa. Jan. 10, 2012) (finding balancing to weigh in favor of admitting Rule 404(b) evidence since "[t]he need for the evidence is clear: to prove the elements of intent and knowledge, and lack of mistake," and "any threat of unfair prejudice can be cured with a proper limiting instruction").

        c)        <u>Limiting Instructions</u>

In *Huddleston*, the Supreme Court held that a district court must "instruct the jury that the [other] acts evidence is to be considered only for the proper purpose for which it was admitted."

485 U.S. at 691-92.  While we will grant the Government's pre-trial motion to admit the evidence at issue, we will do so without prejudice to Defendant raising objections at trial that were not previously addressed, and without precluding the parties from requesting limiting instructions that the Court should provide to the jury.  *See Shelow*, 2011 WL 6130974, at \*6 (holding same).  Where appropriate, the Court will offer limiting instructions both at the time that the evidence is admitted and in the final jury instructions.  *See Cruz*, 326 F.3d 392, 396 (3d Cir. 2003) ("[T]he district court met the fourth requirement for admission of Rule 404(b) evidence by carefully providing the jury with limiting instructions both immediately after [the prior bad act evidence] testimony and also during the jury charge.").

### III.   CONCLUSION

For the foregoing reasons, the Government's Motion *in Limine* to Admit Evidence Regarding Defendant Barrett Byron Staton's Bank Records and Income Tax Returns is granted.

An appropriate Order follows.

                                                  **BY THE COURT:**

                                                  _____

                                                  **R. BARCLAY SURRICK, J.**