IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA      :
              :      CRIMINAL ACTION
        v.           :
              :      NO. 10-800-01
BARRETT BYRON STATON      :


**SURRICK, J.**                                    **JUNE   8  , 2012**

<u>**MEMORANDUM**</u>

Presently before the Court are Defendant Barrett Byron Staton's Motion to Compel

Disclosure of Grand Jury Minutes and Testimony (ECF No. 87) and Motion to Dismiss

Indictment (ECF No. 90). For the following reasons, the Motions will be denied.

**I.      BACKGROUND**

     **A.     Procedural History**

On December 9, 2010, a sealed indictment was returned against Defendants Barrett Byron

Staton, Matthew Staton and William Haken, Jr. (ECF No. 1.) The indictment charged the three

Defendants with a "Scheme and Artifice to Defraud," which Defendants had engaged in from

2002 through 2008. Specifically, Defendants were charged with: conspiracy to commit wire

fraud, in violation of 18 U.S.C. § 1349 (Count One); wire fraud, in violation of 18 U.S.C. § 1343

(Counts Two through Five); mail fraud, in violation of 18 U.S.C. § 1341 (Counts Six through

Nine); and making a false statement in a loan application, in violation of 18 U.S.C. § 1014

(Count Ten). (*Id.*) The indictment was unsealed on February 3, 2011. (*See* ECF No. 3.) Trial

was scheduled to commence on May 2, 2011. (ECF No. 28.) All three Defendants moved for a

continuance of the trial date. (ECF Nos. 29-31.) Their request was granted, and trial was

rescheduled to begin on July 25, 2011. (ECF No. 32.) On June 10, 2011, Defendant Barrett

Byron Staton moved to have the case declared "complex" and for a continuance of the trial date. (ECF No. 35.)  On June 22, 2011, we granted the motion for a continuance.  Trial was rescheduled for February 21, 2012.  (ECF No. 36.)

On July 21, 2011, a federal grand jury returned a First Superseding Indictment (hereinafter, "Indictment") against Defendants Barrett Byron Staton, Matthew Staton and William Haken, Jr.  (Indictment, ECF No. 38.)  This Indictment charged Defendants with engaging in a "Scheme and Artifice to Defraud" from January 2002 to February 2011.  (*Id.*)  Defendants were again charged with:  conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count One); wire fraud, in violation of 18 U.S.C. § 1343 (Counts Two through Five); mail fraud, in violation of 18 U.S.C. § 1341 (Counts Six through Nine); and making a false statement in a loan application, in violation of 18 U.S.C. § 1014 (Count Ten).  (*Id.*)

On February 15, 2012, Defendant Barrett Byron Staton filed a motion for a continuance of the trial date.  (ECF No. 66.)  On February 22, 2012, we granted this motion.  Trial was rescheduled for June 4, 2012.  (ECF No. 70.)  On April 11, 2012, a hearing was held, at which Defendant Haken entered a plea of guilty.  (*See* ECF No. 83 (Minute Entry).)[1]  Defendants have filed several pretrial discovery motions.  (*See* ECF Nos. 87, 89, 92, 93, 95.)[2]  Defendant Barrett

---

[1] Defendant Haken's sentencing is scheduled for July 11, 2012.  (ECF No. 83.)

[2] In addition to these pretrial discovery motions, the Government has filed a Motion in Limine to admit Defendant Barrett Byron Staton's bank records and income tax evidence.  (ECF No. 96.)  That Motion was granted by Memorandum and Order dated June 5, 2012.  (ECF Nos. 116, 117.)  Defendants Barrett Byron Staton and Matthew Staton have filed a motion for severance.  (ECF Nos. 91, 98.)  Defendant Barrett Byron Staton has filed a Motion to Reimburse Travel Expenses (ECF No. 100), a Motion to Return Property (ECF No. 108), and very recently, a Motion for Leave to File Motion to Suppress Evidence and a Motion to Suppress Evidence (ECF Nos. 118, 119).

Byron Staton has filed the instant Motion to Compel Disclosure of Grand Jury Minutes and Testimony (Def.'s Mot. Compel, ECF No. 87) and Motion to Dismiss Indictment (Def.'s Mot. Dismiss, ECF No. 90).[3]

On May 17, 2012, a conference was held, at which the Government and counsel for Defendants Barrett Byron Staton and Matthew Staton discussed the exchange of discovery materials, and issues related thereto. A telephone conference, in which the Government and counsel for Defendants Barrett Byron Staton and Matthew Staton participated, was subsequently held. During that telephone conference, we granted a continuance and trial was rescheduled to commence on June 18, 2012. Defendants Barrett Byron Staton and Matthew Staton have since filed a joint motion for a continuance of the trial date. (ECF No. 107.) On June 1, 2012, this motion for a continuance was denied. (ECF No. 110.)

B.     The Fraudulent Scheme

The Indictment alleges that from January 2002 to February 2011, Defendants intentionally devised "a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses." (Indictment ¶ 1.) It alleges that as part of the scheme, Defendant Barrett Byron Staton owned and operated, sometimes through nominees, various office copier broker businesses ("Businesses"). (*Id.* at ¶ 2.) These Businesses were: (1) Access Business Solutions, Inc. ("ABS"); (2) First Choice Imaging, LLC ("FCI"); (3) First Choice Financial Leasing Company, Inc. ("FCFLC"); (4) NBS Document Solutions, also known as New

---

[3] On May 9, 2012, Defendant Matthew Staton filed a document, titled "Pre-Trial Motions," in which he requested to join in all of his co-defendants' pretrial motions. (ECF No. 98 at ¶ 3.) The instant Motions apply only to Defendant Barrett Byron Staton. Accordingly, Matthew Staton lacks standing with respect to these Motions.

Business Systems, LLC ("NBS"); (5) World Trade Systems ("WTS"); (6) United Office Products ("UOP"); and (7) Ultra Business Systems, LLC ("Ultra"). (*Id.*) Defendants Matthew Staton and Haken were employed by each of these Businesses as salesmen. (*Id.*) Defendant Haken was the nominee owner of FCI and FCFLC from May 2005 to March 2007. (*Id.*)

The Businesses served as brokers between small businesses or non-profit organizations wishing to obtain new office copiers ("Customers") and financing companies that specialized in funding office copier leases. (*Id.* at ¶ 3.) Defendants would have the Customers complete a copier lease and an application for financing. Defendants would present the completed and signed lease and application to the financing company. (*Id.*) If the Customer's credit was acceptable, the financing company would fund the lease by providing to the Business a lump sum payment for up to 125 percent of the value of the leased copier. (*Id.*) The financing company intended that this lump sum payment would be used by the Business primarily to fund the purchase and installation of the new copier at the Customer's place of business, and that the remainder would serve as the Business' profit. The financing company, in turn, would collect the monthly lease payments from the Customer over the term of the copier lease. (*Id.*)

Defendants "enticed" Customers to enter into new leases for copiers by offering package deals in which copiers could be leased at significantly lower monthly rates than what their competitors charged, and by offering other valuable discounts, such as unlimited copiers, servicing, maintenance and supplies. (*Id.* at ¶ 4.) Defendants also offered to "buy out" the Customers' existing copier leases, return the copier to the prior financing company, and include this cost as part of the new and much lower copier lease payment. (*Id.* at ¶ 5.) In addition, Defendant would alter some leases and financing applications, which the Customers had already

signed, to include additional copiers or features that the Customer did not order and ultimately never received. (*Id.* at ¶ 6.) This practice increased the apparent value of the lease and, as a result, the lump sum payment that the Businesses would receive from the financing companies. (*Id.*) Ultimately, the Businesses would not pay off the Customer's prior leases, as promised. They would, instead, retain a greater portion of the lump sum payment from the financing companies for their own use. (*Id.* at ¶ 7.)

Defendants also induced Customers to complete new lease applications under the guise of "refinancing" their leases on existing copiers, then submit the new applications to a different financing company. (*Id.* at ¶ 8.) The idea behind this scheme was that the refinancing would result in a lower monthly payment. (*Id.*) As a result of this practice, the Businesses would receive a lump sum payment from the second financing company for the present value of the refinanced copier leases. (*Id.* at ¶ 9.) However, Defendants failed to pay off the first lease, and instead kept the funds it received. (*Id.*) As a result of this practice, the Customers became obligated to make two separate lease payments on one copier and the Businesses were able to collect two lump sum payments for each copier. (*Id.*) Defendants did not return the existing copiers to the financing company as promised. (*Id.* at ¶ 10.) Instead, Defendants stored the copiers at various locations. (*Id.*) Defendants would periodically close one Business and reopen it under a different business name in order to perpetuate the fraud. (*Id.* at ¶ 13.) In some cases, the new Business would be opened under the name of a nominee owner to hide the involvement of Defendant Barrett Byron Staton. (*Id.*)

In executing this fraudulent scheme, Defendants submitted fraudulent applications to financing companies electronically by facsimile or e-mail. (*Id.* at ¶ 11.) Defendants would

receive payments from the financing companies through interstate wire transfers conducted through financial institutions, or checks through the United States Postal Service or commercial carriers.  (*Id.* at ¶ 12.)

## II.     DISCUSSION

### A.     Motion to Compel Disclosure of Grand Jury Minutes and Testimony

#### 1.     *The Parties' Contentions*

Defendant Barrett Byron Staton (hereinafter, "Defendant") seeks an order compelling disclosure of the minutes and testimony of all matters occurring before the Grand Jury, other than its deliberations, that resulted in the instant Indictment.  (Def.'s Mot. Compel.)  Defendant points to the "inordinate delay from the inception of the Government's investigation and its participation in the initial arrest of [Defendant] in 2004 until the filing of this present Indictment."  (Def.'s Compel Mem. 2, ECF No. 87.)  Defendant believes that at least one family member, his father, was called before the Grand Jury to provide testimony.  (*Id.* at 3.)  Defendant believes that this testimony supports his argument that the Government "judiciously delayed the filing of the Indictment."  (*Id.*)  He states that it is "essential" to his Motion to Dismiss that he obtain the minutes of the proceedings before the Grand Jury "to determine when's or where's as to how the Government progressed with its investigation; its presentment to a Grand Jury; and ultimately resulting in the Grand Jury's presentment against Staton and his remaining codefendant, to wit his brother, Matthew."  (*Id.* at 3-4.)

The Government responds that this Motion should be dismissed.  (Gov't's Resp. 7, ECF No. 103.)  The Government explains that pursuant to the Jencks Act and the *Brady* doctrine, it has already provided Defendants with the grand jury testimony of the witnesses whom it expects

to call at trial. Accordingly, there is no need for the Court to issue an order with respect to those portions of the grand jury minutes. (*Id.* at 7-8.)

With respect to the remaining grand jury materials that Defendant requests, the Government argues that Defendant has failed to meet his burden of identifying a "particular need" for the disclosure of such information. (*Id.* at 8.)

### 2. Legal Standard

"[T]he standard practice since approximately the 17th century has been to conduct grand jury proceedings in secret." *Giles v. California*, 554 U.S. 353, 371 (2008); *see also Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979) ("[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."); *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991) (noting that "grand jury proceedings are subject to strict secrecy requirements"). However, Federal Rule of Criminal Procedure 6(e) contains various exceptions to grand jury secrecy.

Rule 6(e)(3)(E)(ii), which Defendant appears to rely upon, gives courts the power to authorize disclosure of a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).

> Because grand jury proceedings are entitled to a strong presumption of regularity, a defendant seeking disclosure of grand jury information under Rule 6(e)(3)(E)(ii) bears the heavy burden of establishing that "particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment."

*United States v. Bunty*, 617 F. Supp. 2d 359, 372 (E.D. Pa. 2008) (internal quotation marks and citation omitted); *see also United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989)

(emphasizing that to obtain grand jury materials, a party must show "a particularized need for that information which outweighs the public interest in secrecy") (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1957)).

3. *Analysis*

As discussed above, with respect to the grand jury testimony of the witnesses whom the Government expects to call at trial, the Government represents that it has already provided such testimony to Defendant. With respect to the remaining grand jury testimony, Defendant has failed to show a "particularized need" for the information he seeks. Defendant's Motion merely suggests that permitting him access to grand jury materials would show whether there is evidence to support an argument that the Government "judiciously delayed the filing of the Indictment." (Def.'s Compel Mem. 3.) Defendant claims that access to the grand jury minutes and testimony would enable him "to determine when's or where's as to how the Government progressed with its investigation; its presentment to a Grand Jury." (*Id.* at 3-4.) However, Defendant does not identify any particular event or irregularity that took place and instead relies on pure speculation. A court may not "launch into an adversary excursion into the grand jury proceeding which returned an indictment," unless the party challenging that proceeding meets the "heavy burden" of demonstrating a "particularized need" for disclosure. *United States v. Smith*, No. 07-389-14, 2009 WL 546211, at *6 (M.D. Pa. Mar. 4, 2009) (citing *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399-400 (1959); *Procter & Gamble Co.*, 356 U.S. at 683). A bald assertion of impropriety by means of judicious delay, or speculation about what the grand jury minutes may reveal, is insufficient to establish a particularized need for disclosure. *See United States v. Minerd*, 299 F. App'x 110, 111-12 (3d Cir. 2008) (holding that defendant's "vague allegation"

that the Government had committed "prosecutorial misconduct and fraud before the grand jury" did not demonstrate particularized need for disclosure); *United States v. Tucker*, No. 05-440-10, 2011 WL 1598983, at *2 (E.D. Pa. Apr. 28, 2011) (denying motion to inspect grand jury minutes and transcripts since "speculation about what the grand jury minutes may reveal are insufficient to establish a particularized need for disclosure"); *Smith*, 2009 WL 546211, at *6 (denying motion for grand jury transcripts since defendant failed to allege or demonstrate any "particularized need"); *Bunty*, 617 F. Supp. 2d at 372-73 (denying motion requesting transcripts of grand jury proceedings since defendant failed to demonstrate irregularities with respect to the second grand jury proceedings which would require dismissal of this case and "offered nothing more than 'unsupported beliefs and conjectures' regarding improprieties that may have occurred during the first grand jury proceeding"); *see also United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir. 1972) (denying request for disclosure of grand jury material because "mere speculation that such improprieties may have occurred will not suffice"). Defendant has offered nothing here but unsupported beliefs and conjecture. As the Government suggests, Defendant is simply on a fishing expedition. Accordingly, Defendant's Motion to Compel Disclosure of Grand Jury Minutes and Testimony fails.[4]

---

[4] To the extent that Defendant seeks disclosure under Rule 6(e)(3)(E)(i), the Motion also fails. This Rule allows a court to order disclosure of grand jury matters "preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i). In order to obtain a grand jury transcript under this subsection of the Rule, parties "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need to disclose is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222. Parties must also demonstrate a "particularized need" for the disclosure, such as impeachment or refreshing the recollection of a witness. *Procter & Gamble Co.*, 356 U.S. at 683; *see also In re Grand Jury Matter*, 682 F.2d 61, 64 (3d Cir. 1982); *United States v. Bishop*, No. 11-0038-02, 2012 WL 1677429, at *5 (M.D. Pa. May 14, 2012); *United States v. Salerno*, No. 10-301, 2011 WL 6141017, at *10 (M.D. Pa. Dec.

### B. Motion to Dismiss Indictment

#### 1. The Parties' Contentions

Defendant claims that the Government "intentionally delayed [in] bringing an indictment to gain a tactical advantage over him . . . ." (Def.'s Dismiss Mem. 14, ECF No. 90.) Defendant asserts that he was prosecuted in Pennsylvania state court in Montgomery County in 2008, a case that was ultimately withdrawn, and that as a result, "the Government gained a tactical advantage against [Defendant] by being provided all of [Defendant's] financial records up until that point in time under a seizure by the state authorities." (*Id.* at 3.)

Defendant claims that his ability to defend himself has been "severely compromised." (*Id.* at 1.) He claims that "[e]ntire business records have been seized and kept under lock and key for periods of three and seven years." (*Id.*) He claims that "as trial looms, most of the evidence concerning [] [Defendant] is located in various counties in Pennsylvania and because of the restrictions placed upon him at the Government's request, [Defendant] is unable to freely travel to assist in his defense." (*Id.*) Defendant argues that he was unfairly prejudiced by this delay since "[a]ll [of] his records were kept from him for an extensive period of time and negating any real ability to prepare a defense during critical time stages pre indictment" and "[h]e does not have a substantial ability to assist counsel in the review of records which are securely maintained by the Government." (*Id.* at 14-15.) Furthermore, Defendant claims that "[t]he geographical change [] where [Defendant] resides has compromised his ability to interact with witnesses necessary to his defense" and "has impacted any ability that he has [to have] continuous

---

9, 2011). Since, as discussed above, Defendant has failed to demonstrate such a "particularized need" for disclosure, his Motion would fail under this subsection as well.

meaningful contact with this lawyers." (*Id.* at 15.) Defendant asserts a due process violation based upon pre-indictment delay. (*See* Def.'s Mot. Dismiss ¶ 9.)

The Government responds that Defendant's assertion that it purposefully delayed the timing of the Indictment to gain a tactical advantage at trial is based upon conjecture, not fact. (Gov't's Resp. 11.) It argues that Defendant has not shown that there was any intentional delay, or that the Government orchestrated a delay to gain a tactical advantage over Defendant in prosecuting this case. (*Id.*) The Government claims that any pre-indictment delay was due to its need to conduct a thorough investigation into a complex scheme involving numerous transactions. (*Id.* at 13.) The investigation was an ongoing investigation because Defendant's illegal activities continued even up until the time of his indictment. In addition, the Government asserts that any prejudice that Defendant contends he has suffered is based upon speculation, not fact, and lacks specificity. (*Id.* at 13.)

### 2.   *Legal Standard*

The statute of limitations is the "primary guarantee against bringing overly stale criminal charges," *United States v. Marion*, 404 U.S. 307, 322 (1971). However, it "does not fully define the [defendant's] rights with respect to the events occurring prior to indictment." *Id.* at 324. A pre-indictment delay can be considered a due process violation warranting dismissal of the indictment if the defendant can prove both: "(1) that the government intentionally delayed bringing the indictment in order to gain some advantage over him, and that (2) this intentional delay caused the defendant actual prejudice." *United States v. Ismaili*, 828 F.2d 153, 167 (3d Cir. 1987) (citing *Marion*, 404 U.S. at 325). Defendant bears the burden of demonstrating these elements. *Id.* at 168.

3.     *Analysis*

a)     <u>Intentional Delay</u>

Defendant's claim that the Government "*intentionally* delayed [in] bringing an indictment to gain a tactical advantage over him" lacks evidentiary support. (Def.'s Dismiss Mem. 14 (emphasis added).) Defendant has presented testimony from his February 2, 2011 initial appearance hearing of a Government Agent who participated in the investigation of this case. The Agent testified that "the charges against [Defendant] have dragged out over a number of years just because of some administrative issues with the U.S. Attorney's office out of the Eastern District." (Feb. 2, 2011 Hr'g Tr. 16, 19, Def.'s Mot. Dismiss Ex. A; *see also* Def.'s Mot. Dismiss ¶ 38 (quoting same).) This Agent also testified that he had been on this case for seven years. (Feb. 2, 2011 Hr'g Tr. 17.) This evidence does not satisfy Defendant's burden of showing *intentional* delay. *See Ismaili*, 828 F.2d at 168 n.18 (finding that "whatever delay may have been experienced cannot be characterized as improper" since the investigation had been ongoing); (*see also* Feb. 2, 2011 Hr'g Tr. 17 (Agent testifying that he had been investigating the case for seven years)). The fact that there has been an investigative delay does not itself demonstrate that the Government has undertaken a delay solely "to gain tactical advantage over the accused." *See United States v. Lovasco*, 431 U.S. 783, 795 (1977) (holding that "investigative delay is fundamentally unlike" intentional delay by the Government) (citing *Marion*, 404 U.S. at 324) (internal quotation marks omitted). The mere fact that there has been a pre-indictment delay that has spanned several years does not, by itself, demonstrate intentional pre-indictment delay. *See United States v. Ladson*, 238 F. App'x 874, 876 (3d Cir. 2007) (rejecting argument that a three-year pre-indictment delay was circumstantial evidence sufficient, by itself, to meet defendant's

burden of proof regarding intent); *United States v. Crouch*, 84 F.3d 1497, 1514-15 (5th Cir. 1996) (holding that a seven-year pre-indictment delay does not by itself establish intent to gain advantage or prejudice); *United States v. Wolford*, No. 08-29, 2010 WL 3938238, at *3 (W.D. Pa. Oct. 4, 2010) (finding that evidence did not support a conclusion of intentional pre-indictment delay, even though the singular incident, upon which the indictment was based, occurred thirty-four months before the indictment).

The Government contends that any delay "is attributable to the process of unraveling the Defendant's many fraudulent schemes." (Gov't's Resp. 11.) It explains:

> The [Indictment] charges a complex criminal conspiracy spanning many years. Federal agents actively investigated this case from mid-2004 up to and until the return of the [Indictment] in July 2011. Indeed, [Defendant], along with Matthew Staton, continued to commit fraud for the length of this investigation, using various companies and aliases to conceal their activities. In addition, [Defendant] moved his fraudulent business from Pennsylvania to Florida to continue his scheme and avoid detection. As such, the lengthy period of the investigation was dictated only by the scope, scale, and continuing nature of the offense conduct, not by an improper motive on the part of the United States.

(*Id.* at 11-12.) Defendant has submitted no evidence showing otherwise. The Third Circuit has adopted the proposition that "there is no requirement imposed by the Fifth Amendment which requires that a prosecutor seek an indictment the moment he has probable cause to believe that an accused is guilty." *Ismaili*, 828 F.2d at 168 (quoting *Lovasco*, 431 U.S. at 791). Moreover, the Supreme Court has stated that with respect to cases in which a criminal transaction involves more than one person or more than one illegal act, "compelling a prosecutor to file public charges as soon as the requisite proof has been developed against one participant on one charge would cause numerous problems . . . ." *Lovasco*, 431 U.S. at 792-93. The Court explained:

> In some instances, an immediate arrest or indictment would impair the prosecutor's ability to continue his investigation, thereby preventing society from bringing

13

> lawbreakers to justice. In other cases, the prosecutor would be able to obtain additional indictments despite an early prosecution, but the necessary result would be multiple trials involving a single set of facts. Such trials place needless burdens on defendants, law enforcement officials, and courts.

*Id.* at 793. The offenses with which Defendant has been charged fall squarely within this principle. The fraudulent scheme occurred over a span of many years, with Defendant making active efforts to conceal the scheme, including the periodic closing of one Business and reopening it under a different business name — and in some cases, by reopening the Business under the name of a nominee owner to hide the involvement of Defendant. Moreover, there were a number of people potentially involved in the scheme. Defendant has not demonstrated that the pre-indictment delay was due to anything other than the Government's need to investigate the scheme thoroughly before bringing an indictment, or that pre-indictment delay was designed to gain a tactical advantage over Defendant. *See Ladson*, 238 F. App'x at 876 (affirming district court's finding of no intentional delay since "there [wa]s nothing in the record to suggest a nefarious purpose on the part of the government"); *Ismaili*, 828 F.2d at 168 (affirming finding of no intentional delay, even though the delay and reasons for the delay were not particularly compelling); *United States v. Newmark*, No. 06-447, 2007 WL 839077, at *7-8 (E.D. Pa. Mar. 14, 2007) (finding no intentional delay, even if delay could be described as "negligent," since the Government was continuing its investigation until it could "eventually conclude[] that a provable wire and mail-fraud scheme had been perpetrated by [the two defendants]"). Indeed, while the Government continued its investigation, Defendant continued to carry out the fraudulent scheme. (*See* Feb. 2, 2011 Hr'g Tr. 23 (Agent testifying that "literally years passed between anything. Meanwhile, [Defendant] was out there committing the same crimes."); *id.* at 19 (Agent testifying that the fraudulent scheme continued to be committed in the Florida area).) Defendant has

14

offered no basis on which to conclude that the Government intentionally delayed in bringing the Indictment in order to gain an advantage. Since Defendant has failed to establish the first prong of the alleged due process violation, Defendant's Motion to Dismiss must be denied.

b) <u>Actual Prejudice</u>

Even if the Government was somehow found to have intentionally delayed bringing the Indictment for purposes of gaining a tactical advantage over Defendant, Defendant has failed to make a showing that he was actually prejudiced as a result. With respect to Defendant's argument that he has been prejudiced by the Government's seizure of business records, and the fact that Defendant is unable to travel freely to assist his defense, Defendant has been provided with thousands of pages of business records in discovery. On more than one occasion, Defendant has been provided with the opportunity to inspect and copy any of these business records. Indeed, at one point, the Government offered Defendant an entire week to inspect and copy any business record seized during the execution of the 2004 and 2008 search warrants. Moreover, the records in question are, in fact, Defendant's own business records. He created them. Defendant has been given more than ample time to prepare a defense, and this Court has granted him a number of continuances of the trial date to permit him to do exactly that.

To the extent that Defendant claims that, as a result of the Government's multi-year investigation, he has been prejudiced by the unavailability of witnesses,[5] such argument also

---

[5] Defendant claims that "[d]uring the period of the Government's pursuit of [Defendant], over the seven plus year period, certain witnesses have passed." (Def.'s Mot. Dismiss ¶ 44.) These witnesses include:

Merrill Denslow, a grandfather of Staton died on May 15, 2008 and had intimate knowledge of Staton's business practices with an investment of $35,000 in an effort to save said company; Roy Staton, Staton's grandfather, died on August 28, 2009 and

fails.  Due process does not bar prosecution when potential witnesses have died during a pre-indictment delay.  *Lovasco*, 431 U.S. at 789; *see also Ismaili*, 828 F.2d at 168 (rejecting argument that the fact that the testimony of two witnesses had been lost due to their deaths during the period of pre-indictment delay constituted actual prejudice); *United States v. U.S. Gypsum Co.*, 550 F.2d 115, 119 (3d Cir. 1977) (holding that the mere fact that a potential witness died during a delay was not sufficient to prove prejudice where there was no showing that that witness would have offered testimony not merely cumulative of evidence already at defendants' disposal); *United States v. Borish*, 452 F. Supp. 518, 523 (E.D. Pa. 1978) ("Allegations of dim memories, inaccessible witnesses and lost evidence are insufficient, without more, to demonstrate that the defendants cannot receive a fair trial or to justify dismissal of the indictment.").  Moreover, the record shows that Defendant has been represented by counsel since soon after he was arrested on March 8, 2011.  (*See* ECF No. 18 (reflecting Defendant's representation by attorney on March 9, 2011)); *see also Wolford*, 2010 WL 3938238, at *3 (finding that defendant failed to present evidence establishing actual prejudice because, in part, he was represented by counsel since shortly after he was arrested).

---

had previously given [ABS] the sum of $85,000 in an effort to save the company. Mr. Staton also had intimate knowledge as to the operation of [ABS] and Staton's attempts at pursuing the refinancing structuring of the company with a new business plan when it ran into financial difficulties in 2003-2004.  Lastly, Captain John Groves, grandfather of Staton's wife, Anya, a former Marine died on May 22, 2011, and was knowledgeable of the operation of Staton's businesses and the interaction with Government representatives and the effect of same by advancing $10,000 to assist when the company needed financial help.

(*Id.*)  Defendant states that these witnesses "were intimately involved at various times both before and during the Government's investigation and [Defendant's attempt to keep his business operations viable]."  (*Id.*)

Further, the Government argues that "[w]hether Defendant's relatives were aware of the financial condition of any of his Businesses is not probative [of] the issue of fraud alleged in the Superseding Indictment." (Gov't Resp. 13.) The Government explains that the fact that Defendant's relatives invested in his business is "not relevant to whether Defendant intended to steal money by offering fraudulent lease agreements to victim businesses under the guise of a 'refinance' deal." (*Id.* at 13-14.) At this juncture, we can only speculate as to what Defendant's deceased relatives could have added to this case. Defendant has offered no proof, other than his own statement, as to what the exculpatory nature of this testimony might have been. This is not sufficient. In *United States v. Newmark*, a case that involved a money and property scheme allegedly designed and orchestrated by the defendant to defraud, the defendant argued that he was prejudiced because an "exculpatory" witness had died during the delayed pre-indictment period. The Court rejected this argument, explaining that the defendant could not offer any "proof" of prejudice, but could only "speculate as to what purportedly 'exculpatory' evidence may have existed." *Newmark*, 2007 WL 839077, at *9 n.26; *cf. United States v. Robles*, 129 F. App'x 736, 738 (3d Cir. 2005) (rejecting argument that pre-indictment delay impaired defendant's ability to put on a defense because he could not furnish an alibi for the nights of the offenses, and holding that defendant's general argument that witnesses' memories have faded fell short of showing actual prejudice) (citing *Marion*, 404 U.S. at 325-26; *United States v. Sebetich*, 776 F.2d 412, 430 (3d Cir. 1985)).

Since Defendant has failed to demonstrate that he suffered actual prejudice as a result of

any pre-indictment delay, his Motion to Dismiss fails for this reason as well.[6]

## III.    CONCLUSION

For the foregoing reasons, Defendant's Motions are denied.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**

---

[6] While the law concerning Defendant's Sixth Amendment right to a speedy trial is referred to in Defendant's Memorandum, Defendant does not appear to argue that this right was violated by any pre-indictment delay by the Government. (*See* Def.'s Dismiss Mem. 3-5.) Nevertheless, to the extent that Defendant asserts such a violation, the argument cannot stand. The protection afforded by the Sixth Amendment right to a speedy trial does not vest until formal charges have been filed or the accused has been arrested; it does not extend to pre-accusation delays. *Robles*, 129 F. App'x at 738 (citing *Marion*, 404 U.S. at 320); *see also Lovasco*, 431 U.S. at 789 (noting that for purposes of the Speedy Trial Clause of the Sixth Amendment, pre-indictment delay is "wholly irrelevant"); *United States v. Frezzo*, 659 F. Supp. 54, 56 (E.D. Pa. 1987) (rejecting argument that Speedy Trial Clause prevents pre-indictment delay and, hence, barred the indictment, since the Sixth Amendment right to a speedy trial does not arise until charges are pending or the defendant is arrested).