IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 10-800-01 |
| BARRETT BYRON STATON | : | |

**SURRICK, J.**                                                                                                                                                                   **JUNE 15, 2012**

### MEMORANDUM

Presently before the Court are Defendant Barrett Byron Staton's Motion for Leave to File Motion to Suppress Evidence (ECF No. 118) and Motion to Suppress Evidence (ECF No. 119). For the following reasons, the Motion to Suppress Evidence is denied.

**I.    BACKGROUND**

    **A.    Facts**[1]

        *1.    Case Background*

The factual background of this case has been set forth in our prior Memoranda. (*See, e.g.*, ECF Nos. 116, 120.) Those Memoranda describe in some detail the fraudulent scheme in which the Government alleges that Defendant was involved.

In March 2004, after the owner of a printing business located in Virginia lodged a formal complaint to the Federal Bureau of Investigation ("FBI"), a federal investigation into Defendant and co-defendants Matthew Staton and William Haken, Jr. commenced. The investigation lasted six years and covered multiple states. (Gov't's Resp. 2, ECF No. 123.)

The Government alleges that Defendant, with co-defendants Matthew Staton and Haken

---

[1] The facts are taken from Defendant's Motions and supporting memoranda and the Government's Response thereto. The parties do not dispute the material facts.

(collectively, "Defendants"), would use various office copier brokerage businesses ("Businesses") to entice small businesses and non-profit organizations ("Customers") into executing new office copier leases by making attractive promises. Defendants did not fulfill these promises. They were supposed to use the payments received from the financing companies as a result of the new leases for the Customers' benefit (*e.g.*, to pay off their office copier leases). However, the payments were instead used for personal gain. When Defendants became overwhelmed with complaints from the Customers, they would shut down the Business, only to reopen it under a different company name, and at times, under a nominee owner. Defendant Barrett Byron Staton also used the Businesses to obtain financing for personal purchases that included luxury vehicles. On April 11, 2012, co-defendant Haken entered a plea of guilty. (*See* ECF No. 83 (Minute Entry).)

Over the course of the investigation, law enforcement agents conducted searches related to Defendant Barrett Byron Staton, in 2004 and in 2008. (Gov't's Resp. 2.) The 2008 searches, and the underlying search warrants in support thereof, are the subject of the instant Motions.

2. *September 25, 2008 Search Warrants*

On September 25, 2008, in Case No. 08-11242-M-1, Magistrate Judge M. Faith Angell authorized a search of "the residence located at 532 Oak Lane, Lititz, Pennsylvania" ("Residence"), pursuant to a warrant. (Def.'s Suppress. Mot. ¶ 1 & Ex. A (copy of search warrant for Residence, application for search warrant, and affidavit providing probable cause for search warrant ("Aff.")), ECF No. 119.)[2] Also on September 25, 2008, in Case No. 08-1242-M-

---

[2] The property located at 532 Oak Lane, Lititz, Pennsylvania, including the Residence and Stand-Alone Garage, *see infra*, was owned by Defendant and his wife. (Def.'s Suppress. Mot. ¶ 6.)

2, Magistrate Judge Angell authorized a search of "a separate, stand alone, garage located on the property of 532 Oak Lane, Lititz, Pennsylvania" ("Stand-Alone Garage"), pursuant to a warrant (Def.'s Suppress. Mot. ¶ 2 & Ex. B (copy of search warrant for, and application for search warrant for, Stand-Alone Garage)); and in Case No. 08-1242-M-3, Magistrate Judge Angell authorized a search of "a storage facility located at Elm Self Storage, 884 Speedwell Forge Road, Lititz, Pennsylvania 17543, designated as A-5" ("Storage Facility"), pursuant to a warrant (Def.'s Suppress. Mot. ¶ 3 & Ex. C (copy of search warrant for, and application providing probable cause for search warrant for, Storage Facility)).[3]  The affidavits providing probable cause for the search warrants for the Stand-Alone Garage and Storage Facility are identical to the affidavit for the search warrant for the Residence.  This affidavit was sworn to by Stephen M. Rich, Jr., Special Agent of the FBI, on September 25, 2008.  A copy of the affidavit (hereinafter, "Affidavit") is included in Exhibit A of Defendant's Motion to Suppress Evidence.  (Def.'s Suppress. Mot. ¶¶ 2-3 & Aff.)

The Affidavit states the facts that Special Agent Rich believed gave rise to probable cause.  From approximately January 2002 to the time of Special Agent Rich's signing the Affidavit (September 2008), "Defendant owned, or operated through nominees, various office copier broker businesses," all of which Special Agent Rich identified by name.  (*See* Aff. ¶ 4.)  In March 2004, Customers of one of Defendant's Businesses complained about fraudulent activity, which prompted the Pennsylvania state police to investigate their complaints.  (*Id.* at ¶ 5.)  After the police discovered evidence of fraudulent interstate wire communications, the investigation was turned over to the FBI.  (*Id.*)  After conducting multiple interviews and reviewing numerous

---

[3] Defendant leased the storage unit designated as A-5.  (Def.'s Suppress. Mot. ¶ 7.)

bank and lease records, the FBI learned that Defendant, using the Businesses, "developed and evolved" the scheme to defraud. The Affidavit describes this scheme in detail. (*See id.* at ¶¶ 6-17.) In the Affidavit, Special Agent Rich stated that from his training and experience as a special agent, he learned that businesses generally maintain records. (*Id.* at ¶ 30.) He then provided a "general list of records maintained by businesses," which includes: bank records, income records, expense records, asset acquisition and disposal records, financial statements and inventory records. (*Id.*) Special Agent Rich also provided specific examples of these categories of records. (*Id.*) Magistrate Judge Angell authorized the three search warrants, based on probable cause as set forth in the Affidavit. (Gov't's Resp. 3; Def.'s Suppress. Mot. ¶¶ 1-3 & Exs. A-C.)

### 3. *September 26, 2008 Searches*

On September 26, 2008, at approximately 7:00 a.m., the 532 Oak Lane property was searched pursuant to the warrants for the Residence and Stand-Alone Garage. (Def.'s Suppress. Mot. ¶¶ 4-5.) The Storage Facility was also searched. (*Id.* at ¶ 4.) As a result of these searches, five computers were seized, as well as compact discs ("CDs") and other personal records and property belonging to Defendant. (*Id.* at ¶13.)

## II. MOTION FOR LEAVE TO FILE MOTION TO SUPPRESS EVIDENCE

### A. The Parties' Contentions

Defendant seeks the Court's permission to file his Motion to Suppress Evidence, since the deadline for filing pre-trial motions has passed. Defendant claims that because he resides in Florida, his ability to meet face-to-face with his counsel, who is located in Pennsylvania, to discuss this case and his defense has been "additional[ly] burden[ed]." (Def.'s Leave Mot. ¶ 10,

ECF No. 118.)⁴ Defendant asserts that there has been "a lapse of Defendant's understanding as to when he could file certain motions relative to his situation." (Def.'s Leave Mot. ¶ 12.) He claims that he "mistakenly believed" that he would be allowed to file a motion to suppress after the pre-trial motion deadline. (*Id.* at ¶ 14.)⁵ Defendant filed the Motion for Leave "so that all aspects of the case can be litigated pretrial as opposed to some time in the future upon review of the case by others." (Def.'s Leave Mot. ¶ 18.) He claims that the Government will not be unduly burdened in responding to the Motion for Leave. (*Id.* at ¶ 19.)

The Government responds that Defendant failed to file a motion to suppress evidence by the many deadlines set by the Court, and that Defendant has failed to articulate "good cause" for why he failed to file a timely motion. Accordingly, the Government argues, Defendant has "waived the issue." (Gov't's Resp. 1.)

**B.     Legal Standard**

Rule 12(b)(3)(C) states that a defendant must submit a motion to suppress evidence *before* trial. *See* Fed. R. Crim. P. 12(b)(3)(C). Rule 12(c) permits courts to set deadlines for the parties to make pre-trial motions. *See* Fed. R. Crim. P. 12(c). "A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any

---

⁴ Defendant asserts that "[a] vast majority of the communication between counsel and client is done via email and/or phone conversations." (Def.'s Leave Mot. ¶ 10.)

⁵ Defendant asserts that he would have been able to file motions *in limine* after the May 4, 2012 deadline if Jencks Act and *Giglio* material had been provided to him and he believed that such motions were justified. (Def.'s Leave Mot. ¶ 13.) Defendant concedes that a suppression motion is not a motion *in limine*. (*Id.* at ¶ 14.) Nevertheless, he believed that he could file a motion to suppress in "a similar vain[sic]." (*Id.*) After reviewing "his particular situation," Defendant "has implored counsel to file the instant suppression motion." (*Id.* at ¶ 15.) He acknowledges that the Motion to Suppress "is based on the face of the warrant," and challenges the scope of items that the Government sought to seize. (*Id.* at ¶ 17.)

5

extension the court provides. For good cause, the court may grant relief from the waiver." Fed. R. Crim. P. 12(e).

### C. Analysis

The parties do not dispute that Defendant's Motion to Suppress Evidence was filed on June 6, 2012, more than one month after the Court-ordered May 4, 2012 pre-trial motion deadline. The Court did not extend this deadline. Thus, Defendant has waived his right to file a suppression motion, unless he can show good cause.

Defendant has not established good cause for why he waited until twelve days before trial to file the Motion to Suppress Evidence. Our February 22, 2012 Order was clear: pre-trial motions were to be filed by May 4, 2012. Defendant was certainly aware of this deadline. He filed several pre-trial motions on May 7, 2012. Indeed, in his Motion for Leave, Defendant states that he could not comply with the May 4, 2012 deadline as it related to his other motions "due to internet difficulties and the requirement to file any and all pleadings in [this District] electronically." (Def.'s Leave Mot. ¶ 2.) Clearly, he was aware of the May 4, 2012 pre-trial motion deadline. Moreover, on December 14, 2011, the applications for search warrants, supporting Affidavit, and search warrants related to the 2008 searches at issue were unsealed. Thus, the facts underlying the instant Motion to Suppress Evidence were disclosed on, and have been known since, December 14, 2011. Furthermore, at the time that these documents were unsealed, Defendant's current counsel had been involved in this case for well over two months. Under these circumstances, Defendant could have filed the instant Motion to Suppress Evidence any time after December 14, 2011, yet did not do so. We granted Defendant multiple continuances of the trial date so that Defendant could become familiar with the discovery

materials and properly prepare his defense. And after the search warrant documents were unsealed in December 14, 2011, we granted Defendant's request for an extension of the pre-trial motion deadline to May 4, 2012.

Defendant asserts that good cause exists because there has been "a lapse of Defendant's understanding as to when he could file certain motions relative to his situation." (Def.'s Leave Mot. ¶ 12.) He suggests that this lapse was caused, at least in part, by the fact that he is located in Florida and his counsel is located in Pennsylvania. (*Id.* at ¶ 10.) Defendant's argument lacks merit. As discussed above, Defendant could have filed his Motion to Suppress Evidence any time after December 14, 2011, yet decided, for whatever reason, not to do so.[6]

Defendant has filed multiple requests for a continuance of trial, the majority of which we have granted. Our June 5, 2012 Order states: "To the extent that Defendants wish to file pretrial motions that relate to *discovery provided after the pretrial motion deadline or relate to new issues that may arise*, Defendants may file a motion seeking leave of Court to file such pretrial motion." (ECF No. 111 at n.3 (emphasis added).) Defendant has not shown good cause for filing the instant Motion to Suppress Evidence late — more than one month after the pre-trial motion deadline has lapsed, almost six months after having known the facts forming the basis of this Motion, and only twelve days before trial. There is no valid reason for the late filing of this Motion, and the Motion could be dismissed on this basis alone. We will, nevertheless, address

---

[6] With respect to Defendant's argument that the geographical distance between Defendant's place of residence in Florida and his counsel's location in Pennsylvania has been additionally burdensome, Defendant was fully aware of the charges in this District and he had an obligation to properly prepare for trial with his attorney notwithstanding his place of residence.

7

the merits of the Motion to Suppress Evidence.[7]

## III. MOTION TO SUPPRESS EVIDENCE

### A. The Parties' Contentions

Defendant seeks to suppress evidence seized pursuant to the three search warrants issued on September 25, 2008. Defendant alleges that there are several defects in Affidavit. The alleged defects are:

> • Paragraph 18 of the Affidavit states that "[o]n May 17, 2004, [Defendant] was arrested for Theft By Deception, Receiving Stolen Property, and Deceptive Business Practices, in Montgomery County, Pennsylvania for activities related to his business [ABS]." (Aff. ¶ 18.) Defendant notes that this conduct occurred almost four years prior to the date that the Affidavit and search warrants were executed; and that the Affidavit fails to advise the Magistrate Judge that Defendant's charges were dismissed on September 15, 2005, pursuant to a civil process authorized under Rule 586 of the Pennsylvania Rules of Criminal Procedure. (Def.'s Suppress. Mot. ¶ 8.)

> • Paragraph 27 of the Affidavit refers to representations by a former employee of Defendant, Daniel Capato, made approximately four months prior to the issuance of the search warrants. Defendant notes that the Affidavit fails to advise the Magistrate Judge that Capato left his employment for Defendant as a "disgruntled employee" and had been involved with litigation against Defendant or one of Defendant's Businesses. (*Id.* at ¶ 9.)

> • Also in paragraph 27, Capato represented that Defendant kept a silver handgun in a desk drawer in the garage. Defendant claims that the Affidavit fails to advise the Magistrate Judge that even if that representation were true, such action is not illegal and Defendant had not been precluded from owning a firearm. Defendant claims that that statement "was done for one purpose that was to impugn [Defendant] and influence the issuing Magistrate's review of the relief that was sought." (*Id.* at ¶ 10.)

---

[7] A district court can deny a suppression motion as untimely, and alternatively, rule that it would deny the motion on the merits. *See, e.g., United States v. Angle*, 234 F.3d 326, 334-35 (7th Cir. 2000) (finding that district court did not abuse its discretion in denying defendant's suppression motion for untimeliness and affirming district court's finding that the search warrant was supported by probable cause).
   Defendant's Motion to Suppress Evidence relies upon the three search warrants at issue, the applications for these search warrants, and the Affidavit. Defendant has provided the Court with a copy of these documents.

- Attachment D of the Affidavit, which lists items that were going to be seized if located, was impermissibly general, as evidenced by the language "including but not limited to." (*Id.* at ¶ 11.) Defendant claims that this language "placed little or no restriction on the data that the investigating agents could seize from the premises of the Defendant and more particularly the information from the computers taken on the day in question." (*Id.* at ¶ 12.)

Defendant claims that these defects in the Affidavit resulted in invalid search warrants. Defendant argues that the warrants were overly broad, and were "general" warrants. (Def.'s Suppress. Mem. 3, ECF No. 119.) Thus, Defendant argues, the searches, and the items seized as a result of those searches, violated the Fourth Amendment of the Constitution. (Def.'s Suppress. Mot. ¶ 14.) Defendant further contends that the Government does not qualify for the good faith exception under these circumstances. (Def.'s Suppress. Mem. 3.) He claims that the good faith exception is vitiated when reckless or misleading information is set forth in the affidavit of probable cause. (*Id.* at 4.)

The Government responds that contrary to Defendant's assertions, the search warrants are not "general" warrants. (Gov't's Resp. 1, 5-7.) It also argues that even if the warrants at issue were found to be "invalid general warrants," the Motion should be denied since the agents who conducted the searches relied in good faith on the warrants. (*Id.* at 8-9.)

### B. The Search Warrants Are Not "General Warrants"

#### 1. Legal Standard

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." *Id.*; *see also United States v. Christine*, 687 F.2d 749, 752 (3d Cir. 1982).

The particularity requirement effectively prohibits the issuance of "general warrants." *Andresen v. Maryland*, 427 U.S. 463, 478 (1976). A general warrant is a warrant that "authorizes 'a general exploratory rummaging in a person's belongings.'" *Christine*, 687 F.2d at 752 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). The particularity requirement assures that "nothing is left to the discretion of the officer executing the warrant." *United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)). The Fourth Amendment "condemns as general warrants those warrants that authorize searches for and seizures of" the following: "smuggled goods," . . . "obscene materials," . . . "books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas," . . . "illegally obtained films," . . . and "stolen property." *Christine*, 687 F.2d at 753 (citations omitted). However, "[t]he Fourth Amendment does not prohibit searches for long lists of documents or other items provided that there is probable cause for each item on the list and that each item is particularly described." *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 148 (3d Cir. 2002).

2. Analysis

Defendant argues that the Affidavit "describes in generic terms some of the items that are sought," making the warrants "general warrants." (Def.'s Mem. 3.) In support of this argument, he points to Attachment D to the Affidavit, which uses the language "including but not limited to." (*Id.*; Def.'s Suppress. Mot. ¶ 11.)

We are satisfied that the Affidavit in this case contains an adequate level of specificity. Attachment D to the Affidavit states:

> Photocopying equipment (including office photocopiers and accessories) as more fully described in the affidavit and business records, as more fully described in the affidavit, including but not limited to:
>
> 1. Bank records – bank statements, canceled checks, deposit tickets, and loan documents.
> 2. Records of income – sales invoices, receipts, cash register tapes, and sales journals.
> 3. Records of expenses – receipts, invoices, canceled checks, and journals and ledgers of expenditures.
> 4. Records of asset acquisition and disposal – titles, deeds, receipts, and depreciation schedules.
> 5. Financial statements – income statements, statement of cash flow, balance sheets, and income and expense projections.
> 6. Inventory records – purchase receipts and inventory sheets and journals.
> 7. Desktop computer and laptop computer containing computer-based records including: customer files, correspondence, contracts, invoices, calendars, appointment books, and notebooks.

(Aff. Attach. D.)

The language "including but not limited to" does not transform the warrants into invalid general warrants. In *Andresen v. Maryland*, the warrant at issue contained a long list of items related to a fraudulent real estate scheme, followed by the phrase "together with other fruits, instrumentalities and evidence of crimes at this [time] unknown." *Id.* at 479. The Court observed that the catch-all phrase at the tail end of the list was "not a separate sentence" but rather appeared at the end of a list of specific items. *Id.* The Court concluded that the reference to "crime" in the catch-all phrase was meant to be interpreted in the context of the preceding specified list, meaning that it limited the search to other evidence of the real estate scheme described in the warrant. *Id.* The Court held that the warrant was not unconstitutionally general. *Id.*

In *United States v. American Investors of Pittsburgh*, 879 F.2d 1087 (3d Cir. 1989), the Court analyzed a warrant authorizing the search of categories of "specifically delineated records

and seizure of other documents and items considered [ ] fruits, instrumentalities and/or evidence of criminal activity." *Id.* at 1093. The Court held that "because the items to be seized were described with sufficient particularity, the general tail, which is not read in isolation, does not render the warrant invalid." *Id.* at 1106. Thus, general phrases in a warrant must be read in the context of the entire warrant and not in isolation. *Andresen*, 427 U.S. at 473; *see also United States v. Johnson*, 690 F.2d 60, 64 (3d Cir. 1982) (noting that warrants must be read as a whole).

Here, the phrase "including but not limited to," followed by the list of materials, certainly is not separate from the list of items to be searched and seized. Based upon a reasonable reading of the language, "including but not limited to" refers to and modifies the prior phrase "business records." If anything, the list of seven categories of materials, and specific examples, that follow define the term "business records" more narrowly and therefore limit, rather than expand, the scope of the searches. Accordingly, the three warrants at issue are not general warrants. *See $92,422.57*, 307 F.3d at 149 (holding that while the scope of the warrant at issue "was certainly extensive, the warrant was not general" since the warrant "'describ[ed] in . . . inclusive generic terms what is to be seized'" and "did not vest the executing officers with 'unbridled discretion' to search for and seize whatever they wished");[8] *see also United States v. Yusuf*, 461 F.3d 374, 394

---

[8] The warrant at issue in *$92,422.57* authorized a search for the following:

> 1) Receipts, invoices, lists of business associates, delivery schedules, ledgers, financial statements, cash receipts, disbursement, and sales journals, and correspondence.
> 2) Computers, computer peripherals, related instruction manuals and notes, and software in order to conduct an off-site search for electronic copies of the items listed above.

*$92,422.57*, 307 F.3d at 149.

(3d Cir. 2006) (concluding that the warrants satisfied the particularity requirement, with respect to the items to be searched, since "the government needed to search for a broad array of corporate documents to piece together . . . unexplained large-scale currency deposits"); *United States v. Fumo*, 565 F. Supp. 2d 638, 646 (E.D. Pa. 2008) (finding that warrants that "describ[ed] in . . . inclusive generic terms what is to be seized" were not general).

### C. Good Faith Exception

#### 1. Legal Standard

Even if a search warrant lacked sufficient particularity, a motion to suppress may be denied based upon the good faith exception to the exclusionary rule. The purpose of the exclusionary rule is to "deter police conduct that violates constitutional rights of citizens." *United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002) (citing *United States v. Leon*, 468 U.S. 897, 919 (1984)). This purpose is not advanced, however, and suppression should not result where an officer, acting in objective good faith, obtains and executes a deficient or invalid warrant "because in such cases only marginal deterrent purposes will be served which cannot justify the substantial costs of exclusion." *Id.* at 436 (internal quotation marks omitted). The good faith exception to the exclusionary rule applies when an officer "executes a search in objectively reasonable reliance on a warrant's authority." *United States v. Hodge*, 246 F.3d 301, 307 (3d Cir. 2001) (quoting *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993)). The exception operates to exclude evidence seized pursuant to an invalid warrant when a "reasonably well trained officer would have known that the search was illegal despite the magistrate [judge's] authorization." *Leon*, 468 U.S. at 922 n.23.

Even though the "mere existence of a warrant typically suffices to prove that an officer

conducted a search in good faith," the Third Circuit has identified the following four narrow situations when application of the good faith exception is not appropriate:

> (1) The magistrate judge relies on a deliberately or recklessly false affidavit in issuing the warrant;
> (2) The magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
> (3) When the affidavit on which the warrant was based is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or
> (4) The warrant is facially deficient in that it fails to particularize the place to be searched or the things to be seized.

*Hodge*, 246 F.3d at 308 (citing *Williams*, 3 F.3d at 74 n.4).

### 2. *Analysis*

The Supreme Court has stated that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Leon*, 468 U.S. at 922. "[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search. *Id.* (internal quotation marks and citation omitted); *see also $92,422.57*, 307 F.3d at 146 ("The fact that an officer executes a search pursuant to a warrant typically 'suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception.'" (citing *Hodge*, 246 F.3d at 308 (internal citation omitted))).

Defendant argues that by failing to advise the Magistrate Judge that (1) Defendant's charges in the state case had been dismissed in 2005 under the Pennsylvania Rules, (2) that one of the informants, a former employee of Defendant, left his employment under Defendant as a "disgruntled employee" and had been involved in litigation against Defendant, and (3) that even if Defendant kept a silver handgun in a desk drawer in his garage, such action was not illegal,

14

Defendant is not entitled to the benefit of the good faith exception. With respect to the four circumstances in which the good faith exception is not appropriate, *see Hodge*, 246 F.3d at 308, Defendant's argument is unclear. He appears to argue that these warrants fall within the first circumstance — when a magistrate judge relies on a deliberately or recklessly false affidavit in issuing the warrant. (*See* Def.'s Mem. 4 ("In conclusion of the factual representation without a full explanation, as the Affiant should have been aware vitiates any good faith exception, if there were one, when reckless information or description thereof is put forth in an affidavit.").)

Defendant's bald assertion that the Affidavit was deliberately or recklessly false is unsupported. The fact that the state charges against Defendant were dropped in 2005, that the informant may have left Defendant's employment on bad terms and that Defendant's maintenance of a handgun was not necessarily illegal does not make the related facts in the Affidavit recklessly false. Nor do they undermine the fact that there exists sufficient probable cause in the Affidavit to establish a reasonable belief that Defendant engaged in the fraudulent scheme and committed the related offenses that he has been charged with. *See Hodge*, 246 F.3d at 309 (rejecting defendant's argument that the affiant knew that the affidavit was insufficient since an affiant's subjective belief regarding the sufficiency of the evidence was irrelevant, and "even if subjective belief were relevant, the fact that officers went to defendant's house, or that they sought additional information, does not show that they knew that their affidavit would be deficient").

The circumstances here show that the agents executing the search warrants acted in objectively reasonable reliance on the warrant's authority. The Affidavit shows why there was probable cause to seize the categories of business records covered by the warrant. The offenses

15

that Defendant has been charged with center around a fraudulent scheme, which involved efforts to conceal funds. This scheme was described, in detail, in the Affidavit. (Aff. ¶¶ 4-17.) The Affidavit states that Defendant's various businesses served as conduits for the fraudulent activity. (*Id.* at ¶¶ 18-26.) It is apparent that the business records are the Government's key evidence in establishing, and linking Defendant's various activities in the context of his businesses to, the fraudulent scheme. The information in the Affidavit was not recklessly false.

In *$92,422.57*, the warrant at issue authorized a search for and seizure of "entire categories of legitimate business records." 307 F.3d at 149. The Court noted that "it is critical to keep in mind that a principal purpose of the warrant was to prove a negative, *viz.*, that [defendant] had *not* engaged in legitimate business transactions with the sham groceries from which [defendant] had received large cash payments." *Id.* It explained that "in order to show that evidence of [legitimate] transactions was lacking, it was necessary to examine *all* of [defendant's] 'receipts, invoices, lists of business associates, records of telephone numbers, delivery schedules, ledgers, financial statements, cash receipt, disbursement, and sales journals, and correspondence'—at least for the relevant period of time." *Id.* at 150 (original emphasis). Similarly, here, the investigation in this case sought to prove a negative — that Defendant had *not* engaged in legitimate transactions with customers using his office copier brokerage businesses. In order to show that no such transactions occurred, it was necessary to search for and seize the general categories of files, of which the affidavit provided specific examples. *See id.* ("Search for and seizing only those records that positively showed illicit transactions would not have sufficed.") Thus, it was objectively reasonable for the executing agents in this case to believe that the warrant properly authorized a search for and seizure of the categories of business

records, as set forth by the warrant.

Defendant cites *Jones v. United States*, 362 U.S. 257 (1960), to support his argument that Magistrate Judge Angell relied upon a deliberately or recklessly false affidavit in issuing the search warrants. However, that case is clearly distinguishable. In *Jones*, the Court addressed whether "sufficient evidence to establish probable cause to search was put before the Commissioner" by the officer who applied for the warrant. *Id.* at 267. There, "[t]he sole evidence upon which the warrant was issued was an affidavit signed by [the officer]." *Id.* The affidavit "claimed no direct knowledge of the presence of narcotics in the apartment." *Id.* at 268. The officer swore that on the day before making the affidavit he had "been given information, by one unnamed, that [defendant] and another 'were involved in the illicit narcotic traffic' and 'kept a ready supply of heroin on hand' in the apartment." *Id.* Defendant there claimed that the affidavit was insufficient to establish probable cause because it did not set forth the affiant's personal observations regarding the presence of narcotics in the apartment, but rested wholly on hearsay. The Court held that hearsay could be the basis for a warrant. *Id.* at 271. It held that it could not "say that there was so little basis for accepting the hearsay here that the Commissioner acted improperly." *Id.*

*Jones* does not address the claim that a magistrate judge has relied upon a deliberately or recklessly false affidavit in issuing the warrant. Indeed, the Court in *Jones* acknowledges that the defendant was arguing that the warrant was defective because the officer's informants were not produced, because his affidavit did not even state their names, and because the officer did not undertake and swear to the results of his own independent investigation of the claims made by his informants. *Id.* at 271. The Court further stated that "[i]f the objections raised were that [the

17

officer] had misrepresented to the Commissioner his basis for seeking a warrant, these matters might be relevant. Such a charge is not made. All we are here asked to decide is whether the Commissioner acted properly, not whether [the officer] did." *Id.* at 271-72.[9]

Based upon the foregoing, even if we were to somehow conclude that the search warrants at issue were invalid general warrants, the agents who conducted the searches relied in good faith on the warrants, which were properly authorized by Magistrate Judge Angell.[10]

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Evidence is denied.

An appropriate Order follows.

**BY THE COURT:**

*/s/ R. BARCLAY SURRICK, J.*

---

[9] *Jones* is also distinguishable on the facts. Special Agent Rich's affidavit states that he was "thoroughly familiar with the information . . . , through either personal knowledge or through discussions with other persons who have reviewed records, interviewed individuals, or have obtained information, which they in turn have reported to me." (Aff. ¶ 2.) Moreover, the Affidavit relies upon information obtained from Daniel Capato, an individual who worked for Defendant during the time period in which Defendant committed the fraudulent scheme; William Burkhardt, an independent contractor who worked for Defendant at one of the Businesses through which Defendant executed the fraudulent scheme; and Dana Maldet, a manager of the self-storage facility in which the storage unit A-5 is located. (*Id.* at ¶¶ 27-29.) These individuals provided information to Special Agent Rich on May 27, 2008, September 22, 2008 and September 22, 2008, respectively. (*See id.*)

[10] To the extent that Defendant argues that the warrant is overly broad and therefore grounds for suppressing the evidence, such argument lacks merit as well. The Third Circuit has contrasted a "general warrant" with a warrant that is simply overly broad. An overly broad warrant "describe[s] in both specific and inclusive generic terms what is to be seized," but it authorizes the seizure of items as to which there is no probable cause. *Christine*, 687 F.2d at 753-54. "Evidence seized pursuant to an overly broad warrant need not be suppressed if the good faith exception applies." *$92,422.57*, 307 F.3d at 149.

18